UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LEONARD DAVIS,

              Plaintiff,

              v.                                      **MEMORANDUM OF**
                                                      **DECISION & ORDER**
                                                        03-CV-4148 (DRH) (WDW)

THE COUNTY OF NASSAU, NASSAU
COUNTY CORRECTIONAL CENTER,
NASSAU COUNTY DEPARTMENT OF
CORRECTIONS, NASSAU COUNTY
SHERIFF EDWARD REILLY, and
JAMES NEAL, M.D.,

              Defendants.
----------------------------------------------------------------X
A P P E A R A N C E S

**ANDREW J. SCHATKIN, ESQ.**
Attorney for Plaintiff
350 Jericho Turnpike
Jericho, New York 11753

**TROY & TROY, P.C.**
Attorneys for Defendant James Neal
382 Rosevale Avenue
Lake Ronkonkoma, New York 11779
By: Alexander Sansone, Esq.

**NASSAU COUNTY ATTORNEY'S OFFICE**
Attorneys for Nassau County Defendants
One West Street
Mineola, New York 11501-4820
By: Bethany Bresnaider O'Neill, Esq.


**HURLEY, District Judge:**

## INTRODUCTION

Plaintiff Leonard Davis has brought the present Section 1983 claim against the above-captioned defendants, alleging that they failed to provide him with timely and sufficient medical treatments during his seven-day confinement in the Nassau County Correctional Center ("NCCC"). The Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons discussed below, the complaint will be dismissed without prejudice to amend.

## BACKGROUND

According to the facts stated in the complaint, Davis was sentenced on November 4, 2002 to seven days' confinement at the NCCC for contempt of court. Upon his arrival at the NCCC, Davis informed the authorities that he suffers from asthma, migraine headaches, and sleep apnea. Davis also indicated at that time that he was feeling shortness of breath, wheezing, and sweating. He asked for the medicines "Singular" and "Advair" as well as a nebulizer to control his asthma, "Imitrex" for his migraines, and a CPAP machine for his sleep apnea. Davis was instead given only "Motrin," an over-the-counter medecine, for his migraines. At 1:00 PM on November 6, Davis told several corrections officers that he needed to see a doctor, but was told to wait until sick call at 8:00 PM that evening. According to Davis, it was only on November 7 that he was given his "essential medication." As a result of this delay and his inadequate treatment while at the NCCC overall, Davis alleges, he has since required treatment for "a serious exacerbation of his asthma" and "continuous migraine

headaches," and has additionally "suffered from serious depression, anxiety, and sleeplessness."

Davis filed suit pursuant to 42 U.S.C. § 1983 against Nassau County, the Nassau County Department of Corrections, the NCCC, and Sheriff Edward Reilly ("the person having executive authority" over the NCCC) (collectively, the "Nassau County Defendants"), as well as Dr. James Neal (who "is and was at all times relevant responsible for the care and well being of prisoners" at the NCCC). According to Davis, the Defendants were "on full notice" of his medical conditions and complaints, as well as those of "similarly situated prisoners," yet "failed to properly treat a condition which is life threatening." Davis accuses the Defendants, "individually and collectively," of having acted "with arbitrary, capricious, and deliberate disregard and indifference," in violation of his right to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution. Davis also complains that although the Defendants "were aware of a previous pattern of deliberate and callous indifference to the medical needs of county prisoners resulting in misdiagnosis, and resulting physical and emotional harm," they "failed to train their employees in the proper mode of diagnosis and treatment" and "in the necessity for quick and exact action, in attending to the medical needs of county prisoners." Davis seeks compensatory damages in the sum of $12,000,000, and punitive damages in the sum of $5,000,000, as well as costs and fees.

*DISCUSSION*

I.   *Dismissal Motions: Legal Standard*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied*, 513 U.S. 816 (1994). Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim entitling him to relief. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). This rule applies with particular force where the plaintiff alleges civil rights violations. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

II.  *Under Either the Eighth or Fourteenth Amendment, the Same Legal Standards Govern Davis's Claims.*

The complaint alleges "cruel and unusual punishment" under the "deliberate indifference" standard of the Eighth *and* Fourteenth Amendments, and Davis insists that both provisions are applicable. The Nassau County Defendants argue that Davis's claims should be analyzed under the Eighth Amendment only, because "[i]t is well established that if a constitutional claim is covered by a specific constitutional provision, . . . [it] must be analyzed

under the standard appropriate to that specific provision, not under the rubric of substantive due process." Both sides are partially correct.

It is true that where the Eighth Amendment applies, it generally renders similar Fourteenth Amendment claims superfluous. *See*, *e.g.*, *Howard v. Goord*, No. 98 Civ. 7471, 2001 WL 739244, at *2, n.1 (E.D.N.Y. June 6, 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849-51 (1998). But because the Eighth Amendment prohibits "cruel and unusual *punishment*," it has been held applicable only to those individuals who have been criminally convicted and sentenced — and are thus being "punished" for something. By contrast, cruelty toward a pre-trial detainee awaiting criminal proceedings (and not yet punished for any underlying criminal charge) is properly classified as a violation of the Fourteenth Amendment right to due process. *See Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d Cir. 2003). It is unclear which amendment covers Davis, as his claim arises from events that occurred while he was being *civilly* punished for contempt, and was thus neither a criminal convict nor a pre-trial detainee. *See Gabbay v. Gales*, No. 97 Civ. 7605, 2000 WL 28156 (S.D.N.Y. Jan. 14, 2000) (Buchwald, J.) (noting that civil rights plaintiff in custody due to civil contempt "may fall somewhere between," and that "research has not disclosed any authority on point.").

The issue of which constitutional amendment governs Davis's case is academic, however. The Fourteenth Amendment has been held to afford pretrial detainees at least as much protection from cruel detention conditions as the Eighth Amendment affords post-

5

conviction prisoners from cruel punishment.[1]  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  Both Amendments proscribe "deliberate indifference to serious medical needs" of prisoners or detainees, *see id.* at 243-44, and Section 1983 allows lawsuits for violations of either Amendment.  *See*, *e.g.*, *Benjamin v. Malcolm*, 803 F.2d 46, 48 (2d Cir. 1986).  Accordingly, it is not necessary to determine the particular Amendment under which Davis's claims are to be analyzed; the substantive underlying standard is the same.[2]

III.     *Davis's "Deliberate Indifference" Claims Must Be Dismissed.*

Assuming without deciding that Davis has adequately alleged that his right to non-deliberately indifferent treatment of his serious medical needs was violated by *someone*, the key question at this juncture is whether Davis's complaint also adequately indicates why *the defendants* should be liable for the violation.  For the reasons that follow, this question

---

[1] This opinion accordingly uses the terms "prisoner" and "detainee" interchangeably, and the terms "jail," "correctional facility," and "prison" interchangeably.  *See*, *e.g.*, *McGrath v. Scott*, 250 F. Supp.2d 1218, 1225 (D. Ariz. 2003).

[2] In order to establish a claim for inadequate medical care under either amendment, a prisoner must show that a defendant prison official acted with "deliberate indifference" to his "serious medical needs."  *See Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003).  This standard incorporates both an objective element (the severity of the medical need), and a subjective element (the official's state of mind).  *Id.* at 183-84.  An objectively "serious medical need" means a "serious illness or injury" that "result[s] in the infliction of unnecessary pain and suffering."  *Id.* at 184.  And under the subjective requirement, the defendant must have "know[n] of and disregard[ed] an excessive risk to the inmate's health or safety."  *Id.*  Were Davis suing the actual NCCC personnel alleged to have denied him adequate medical care, the allegations in his complaint might sufficiently state a claim under this standard.  However, because Davis's complaint only implicates the individuals and municipal entities that supervised the NCCC — and is insufficiently pleaded on other grounds — this opinion does not need to apply the deliberate indifference standard.

6

is answered in the negative.

> A. *Because Davis has insufficiently pleaded the "personal involvement" of Sheriff Reilly and Doctor Neal in the alleged constitutional violations, his Eighth or Fourteenth Amendment claims against them must fail.*
>
> 1. *It is assumed that Davis's complaint implicates Reilly and Neal in their personal, not official, capacities.*

Davis has brought suit against both Nassau County governmental entities, and against two individual defendants: Edward Reilly, the Nassau County Sheriff; and Dr. James Neal, the NCCC's medical supervisor. However, his complaint does not specify whether Reilly and Neal are being sued in their personal, or their official capacities.

The Supreme Court has explained that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," whereas "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. But "[m]ore is required in an official-capacity action," because a governmental entity may be held liable under Section 1983 only when found to be a "moving force" behind a constitutional deprivation; that is, the entity's "policy or custom" must have played a part in the violation of federal law. *Id.* Additionally, punitive damages (which Davis seeks) are unrecoverable under Section 1983 from a municipality (or, therefore, a municipal official sued

7

in his official capacity), but are available in a suit against an official sued in his personal capacity. *See id.* at 166 n.13. Unsurprisingly, the Defendants suggest that Davis's complaint states only official-capacity claims, while Davis's memorandum opposing dismissal suggests that Reilly and Neal have been sued in their personal capacities.

In some federal jurisdictions, where a complaint fails to indicate the capacity in which the defendants are named, the court assumes that they are being sued in their official capacity. *See*, *e.g.*, *Moore v. City of Harriman*, 272 F.3d 769, 781 (6th Cir. 2001). Other jurisdictions reject this assumption, and instead assume that where (as here) the plaintiff "alleges tortious conduct of an individual acting under color of state law" and seeks punitive damages as a remedy, the defendant has been sued in his individual capacity. *See Miller v. Smith*, 220 F.3d 491, 494 (7th Cir.2000). Although the Second Circuit does not seem to have ruled definitively on this issue, it has followed the latter assumption on at least one occasion.[3] *See Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir.1988) ("Notwithstanding the complaint's ambiguous language . . ., Shabazz's request for punitive and compensatory damages, coupled with the defendants' summary judgment motion on qualified immunity but not Eleventh Amendment grounds, suggests that the parties believed that this action is a personal capacity

---

[3] The district courts in this Circuit seem to have uniformly followed the latter assumption as well. *See Davis v. City of New York*, 2000 WL 1877045, at *8 n.18 (S.D.N.Y. 2000); *Marino v. Mobilia*, No. 94 Civ. 5003, 1996 WL 748353, at *2 n.2 (E.D.N.Y. Dec. 11, 1996); *Ortiz v. Court Officers of Westchester County*, No. 95 Civ. 1194, 1996 WL 531877, at *4 (S.D.N.Y. Sept. 19, 1996) (citing *Hafer v. Melo*, 502 U.S. 21, 25-28 (1991)); *Dawkins v. Hudacs*, No. 94 Civ.1655, 1996 WL 12032 at *2 (N.D.N.Y. Jan. 5, 1996) (citing *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1990)); *and Green v. Brown*, No. 94 Civ. 186, 1995 WL 451020, at *1 (E.D.N.Y. July 19, 1995).

suit.") (citing *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir.1987) (finding that "[t]he totality of circumstances . . . suggests that the plaintiffs did seek to sue the defendants in their individual capacities.")). Accordingly, Davis is assumed to have sued Reilly and Neal in their personal capacities.

    2.    *Davis has insufficiently pleaded the "personal involvement" of Sheriff Reilly and Doctor Neal in the alleged constitutional violations.*

The doctrine of respondeat superior cannot be used to establish liability under Section 1983, *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999), and "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, Section 1983 imposes liability "only upon those who actually cause a deprivation of rights," and the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).

A supervisor or high official's "personal involvement" in a constitutional violation can take any of the following five forms: (1) direct participation in the alleged violation, (2) failure to remedy the violation after being informed of it, (3) creation or tolerance of a policy or custom under which the violation occurred, (4) gross negligence in supervising subordinates who committed the violation, or (5) failure to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

9

Davis's complaint states that Reilly and Neal (along with the other Defendants): (1) were "on full notice of the plaintiff's serious complaints, and "on notice of [the] failure to treat and failed to properly act on and treat the plaintiff's condition"; (2) were on notice of, but had a "policy and custom of encouraging, tolerating, permitting, and ratifying prior acts and actions of such arbitrary and deliberate indifference to the proper medical care and treatment of similarly situated inmates in the Nassau County Correctional System"; and (3) failed to "instruct, train and supervise" their employees in the proper mode of diagnosis and treatment involving prisoners," despite their awareness of "a previous pattern of deliberate and callous indifference to the medical needs of county prisoners." While these allegations on their face seem adequate to state a claim against Reilly and Neal under the "personal involvement" standard, they in fact fall short.

As already noted, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted). Even under the liberal "notice pleading standard" discussed in Part I, *supra*, a Section 1983-based complaint must still allege particular *facts* indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere "bald assertions and conclusions of law" do not suffice. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). A complaint that essentially regurgitates the relevant "personal involvement" standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal. *See, e.g., Houghton v. Cardone*, 295

F. Supp.2d 268, 276 (W.D.N.Y. 2003) (dismissing complaint containing conclusory allegations that county sheriff "(1) failed to adequately train or supervise the officers; (2) knew about and tolerated the officers' allegedly unlawful behavior; and (3) 'failed to institute a proper system of review and reprimand' of his deputies so as to prevent the types of unlawful acts alleged here" — but offering no factual basis demonstrating sheriff's personal involvement); *and Pravda v. City of Albany, N.Y.*, 956 F. Supp. 174, 182 (N.D.N.Y. 1997) (granting defendants' motion for judgment on the pleadings, where pro se plaintiff's "conclusory allegations" that county jail superintendent and county sheriff were responsible for setting county policy and supervising corrections officers involved in abuse were "insufficient to establish the personal involvement of these individual Defendants in Plaintiff's alleged constitutional deprivations").

In the present case, Davis offers no specific facts at all that indicate whether Reilly and Neal directly participated in treating or refusing to treat Davis; were informed of Davis's purportedly inadequate treatment but failed to remedy it; created or tolerated a policy or custom of inadequately treating sick or diseased prisoners; were grossly negligent in their supervision of the medical or correctional personnel who were directly involved in the questionable treatment of Davis; or had some actual indication that Davis was being mistreated but failed to act. In sum, Davis's complaint fails to state a valid claim against these defendants.

- B. *Because Davis has insufficiently pleaded a "municipal custom or policy" of constitutional violations on the part of the Nassau County Defendants, his Eighth or Fourteenth Amendment claims against them must fail.*

As suggested in Part II.A.1, *supra*, a municipal entity may be held liable under

11

Section 1983 only when its "policy or custom" played a part in a constitutional violation, and not under the respondeat superior doctrine. *See Leonhard v. U.S.*, 633 F.2d 599, 622 (2d Cir. 1980) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978)). That does not mean that a plaintiff must show that the municipality had an explicitly stated rule or regulation; a policy or custom may be "inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff." *Villante v. Dep't of Corr.*, 786 F.2d 516, 519 (2d Cir.1986). And where a municipality has notice of "a pattern of constitutionally offensive acts" by its employees, but fails to take any remedial steps in response, the municipality may be held liable for similar subsequent acts, if the inaction is determined to have been the result of "deliberate indifference" or "tacit authorization" of the offensive acts — in effect, an "unlawful municipal *policy* of ratification of unconstitutional conduct." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (emphasis added); *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980).

However, mere assertions that a municipality has a custom or policy of violating constitutional rights are insufficient to state a Section 1983 claim "in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993). A single incident involving an employee below the policymaking level will generally not suffice to support an inference of a municipal custom or policy, *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)), absent factual allegations "tending

12

to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).[4] In particular, a plaintiff alleging that a municipality was "deliberately indifferent" to the need to train, monitor, or supervise its employees, but not alleging any facts beyond the specific instance giving rise to his complaint, generally fails to adequately to plead a custom or policy on the part of the municipality. *See Dwares*, 985 F.2d at 101; *Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir. 1987).

This pleading standard is quite similar to the one imposed upon plaintiffs claiming that individual supervisory officials were "personally involved" in their lower-level employees' constitutional violations (under which Davis has failed to plead the personal involvement of Reilly and Neal in the allegedly unconstitutional behavior of the NCCC employees). *See* Part II.A.2, *supra*. The complaint falls equally short in its attempts to pin a municipal custom or policy on the Nassau County Defendants. Davis has simply failed to allege any facts beyond the specific instance that gave rise to his complaint.

IV.   *Davis's Equal Protection Claim Must Be Dismissed.*

Davis's complaint notes without elaboration that the Defendants' conduct also violated the "Equal Protection Clause of the U.S. Constitution." The Nassau County

---

[4] In some exceptional cases, the single event giving rise to litigation may, by itself, suffice to show a "policy." *Turpin*, 619 F.2d at 202. But a municipality cannot be liable for such an event unless it is "so severe as to reach the level of 'gross negligence.'" *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979) (single "brutal and premeditated" beating of inmate by group of county jail guards of varying ranks, one of whom admitted to using "show of force" to control disobedient inmates, warrants inferring policy of inadequate training or supervision). Davis's allegations do not suggest that this is such a case.

Defendants' Memorandum in support of dismissal argues that Davis's complaint fails to state any form of equal protection claim. Davis argues in opposition simply that "[t]his is not so. Rabbi Davis, an observant Jewish person, was selected for this special disparate treatment. If anything, what happened here points to National Origin Discrimination and a clear violation of Equal Protection."

As an initial matter, the Defendants' reply memorandum argues, without citing any authority, that Davis's "broad assertion" of religious discrimination for the first time in his briefings is "improper." There appears to be no Second Circuit authority indicating whether the new factual assertions in Davis's memorandum may be considered in deciding the Defendants' motion. Other jurisdictions appear to be divided: *compare Haas v. Quest Recovery Servs.*, Inc., 338 F. Supp.2d 797, 799 (N.D. Ohio 2004) (refusing to consider "additional facts" asserted in memorandum opposing dismissal motion, because "such memoranda do not constitute a pleading under Rule 7(a).") (citing 2 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed. 2002)); *with Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1185 (10th Cir. 2003) (assuming without deciding that arguments not included in initial or amended complaint and raised for first time in memorandum opposing dismissal motion were properly considered); *and Dausch v. Rykse*, 52 F.3d 1425, 1428 n.3 (7th Cir. 1994) (holding facts asserted in memorandum opposing dismissal motion but not contained in complaint relevant to extent they can be proved consistent with allegations in complaint).

The propriety or impropriety of Davis's factual assertions need not be resolved

here, however. Even after assuming that the fact raised in Davis's memorandum may be considered, and considering it, Davis's equal protection claim is nevertheless as insufficiently pleaded as his other claims. As twice stated previously, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted). In the equal protection context, a complaint that merely alleges that the plaintiff was "singled out," without additional allegations of fact must be dismissed. *See*, *e.g.*, *Al-Charles, Inc. v. Heintz*, 620 F. Supp. 327, 334 (D. Conn. 1985). Davis fails to offer any specific facts suggesting that any sort of anti-Semitic motive is behind the mistreatment he allegedly suffered while detained. In fact, Davis's "selected for special disparate treatment" equal protection claim is fundamentally at tension with his complaint's suggestion that the mistreatment of other "similarly situated inmates" demonstrates the Defendants' deliberate indifference, or some sort of ongoing practice or municipal policy. (Unless, of course, Davis is trying to say that all of the other similarly situated inmates that he refers to are "observant Jewish persons.") This claim accordingly need not be considered further.

VI. *Davis May Move To Amend His Complaint.*

Because Davis has failed to adequately state a claim under the Eighth or Fourteenth Amendments, the Defendants' dismissal motions must be granted.[5] It is the usual

---

[5] There is accordingly no need to address the Defendants' arguments as to the frivolousness of Davis's claim, or the appropriateness of any damages.

practice upon granting a motion to dismiss to allow the plaintiff to replead. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Accordingly, Davis may move for leave to amend his complaint, so long as the proposed amended complaint would not be futile. *See Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 92 (2d Cir. 2003).

## *CONCLUSION*

For all of the above reasons, the Defendants' motion is GRANTED, and Davis's complaint is hereby DISMISSED in its entirety, without prejudice to amend. If Davis desires to move to amend his complaint, he must submit a letter to the Court stating so (with copies served upon all other parties' counsel), on or before March 11, 2005. If Davis fails to submit and serve such a letter by that date, this case will be closed.

**SO ORDERED.**

Dated: Central Islip, New York /s/
February 7, 2005 Denis R. Hurley
United States District Judge